IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

NEW MEXICO STATE UNIVERSITY and     1:16-cv-00911-JAP-LF
NEW MEXICO STATE UNIVERSITY BOARD
OF REGENTS,

    Defendants.

## ORDER DENYING MOTION FOR PROTECTIVE ORDER

THIS MATTER comes before the Court on defendants New Mexico State University and New Mexico State University Board of Regents' ("NMSU") motion for protective order filed on August 24, 2017 (Doc. 106), and fully briefed on September 22, 2017. Docs. 113, 117, 127, 128. NMSU requested a hearing on the motion on September 22, 2017, which is opposed by plaintiff, United States of America ("USA"). Docs. 129, 130. Having reviewed the submissions of the parties and being fully advised in the premises, the Court finds that a hearing is unnecessary and will DENY NMSU's request for a hearing. The Court further finds that NMSU's motion is not well taken and, therefore, DENIES the motion.

**I.**     **Background and Procedural Posture**

This case arises from the allegations of pay discrimination by NMSU based on gender in violation of Title VII. The USA alleges that NMSU discriminated against Meaghan Harkins, f/k/a Meaghan Gregory, by paying her less than her male counterparts although they were performing similar responsibilities for NMSU's track and field program. *See* Doc. 1.

During the course of discovery, disputes arose over NMSU's responses to the USA's discovery requests. Having failed to resolve their differences, the USA filed its First Motion to

Compel in February of 2017. Doc. 44. The Court held a hearing on the USA's motion and granted the majority of the relief sought by the USA. Doc. 78. In the Court's order granting the USA's motion in part the Court ordered that:

> 3. With regard to requests for production, NMSU shall provide to the United States a description of what reasonable searches for documents have been performed, including, but not limited to, specifying which email accounts have been searched and what search terms, if any, were used;
>
> 4. If the United States objects to the adequacy of such searches, NMSU shall meet and confer with the United States in an attempt to reach agreement regarding what, if any, additional searches should be conducted.

*Id*. at ¶ 3–4.

On July 28, 2017, NMSU submitted a letter to the USA that described the scope of the searches conducted by NMSU "to locate documents and information responsive to the United States' Discovery Requests." Doc. 106-1 at 2. On August 14, 2017, the USA responded to NMSU's letter describing what the USA believed to be inadequacies in NMSU's searches and deficiencies in their supplemental responses to discovery requests. Doc. 106-2. After attempts to resolve their disputes, the parties once again contacted the Court for assistance. At a telephonic hearing on August 23, 2017, the parties raised the issue of the adequacy of NMSU's searches and the Court requested additional information in order to make an informed decision on the matter. Doc. 104. Although the parties submitted their respective correspondence as requested by the Court (Doc. 105), before the Court had an opportunity to follow up with the parties, NMSU filed its motion for protective order. Doc. 106.

## II. Motions for Protective Order

Pursuant to Federal Rule of Civil Procedure 26(c), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden

or expense." The decision to enter a protective order is within the court's discretion. *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 482 (10th Cir. 1995). The Supreme Court recognizes that "[t]he trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (internal citation omitted). The party seeking a protective order bears the burden of establishing good cause. *Velasquez v. Frontier Med. Inc.*, 229 F.R.D. 197, 200 (D.N.M. 2005). To demonstrate good cause, the movant must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Id.* (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)). "If a motion for protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery." FED. R. CIV. P. 26(c)(2).

**III.     Discussion**

In its motion, NMSU argues that the discovery sought by the USA, particularly with regard to the additional requested searches, is not proportional to the needs of the case. Doc. 106. NMSU complains that it has produced more than 14,000 pages of documents and performed more than 20 searches. *Id*. at 3, 4; Doc. 127 at 3, 7. The government responds by explaining that the searches conducted by NMSU are inadequate to produce responsive documents. Doc. 117-1.[1] "There are presently only three discovery disputes remaining between the parties." Doc. 117-1 at 1. The disputes involve the adequacy of NMSU's key word searches for documents responsive to the USA's requests for production ("RFP") numbers 8, 10, and 24.

---

[1] The USA initially filed their response in opposition to NMSU's motion on September 7, 2017 (Doc. 113) and subsequently filed a corrected version with its Notice of Errata on September 11, 2017 (Doc. 117).

3

This case presents the question of how parties should search and produce electronically stored information ("ESI") in response to discovery requests. "[T]he best solution in the entire area of electronic discovery is cooperation among counsel." *William A. Gross Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 135 (S.D.N.Y. 2009). Cooperation prevents lawyers designing keyword searches "in the dark, by the seat of the pants," without adequate discussion with each other to determine which words would yield the most responsive results. *Id.*

> While keyword searches have long been recognized as appropriate and helpful for ESI search and retrieval, there are well-known limitations and risks associated with them, and proper selection and implementation obviously involves technical, if not scientific knowledge.
> * * *
> Selection of the appropriate search and information retrieval technique requires careful advance planning by persons qualified to design effective search methodology. The implementation of the methodology selected should be tested for quality assurance; and the party selecting the methodology must be prepared to explain the rationale for the method chosen to the court, demonstrate that it is appropriate for the task, and show that it was properly implemented.

*Id.* (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.,* 250 F.R.D. 251, 260, 262 (D. Md. May 29, 2008)).

Although NMSU has performed several searches and produced thousands of documents, counsel for NMSU did not adequately confer with the United States before performing the searches, which resulted in searches that were inadequate to reveal all responsive documents. As the government points out, "NMSU alone is responsible for its illogical choices in constructing searches." Doc. 117-1 at 8. Consequently, which searches will be conducted is left to the Court.

### A. Request for Production No. 8

RFP No. 8 requests "any and all documents that reflect communications between any NMSU employees relating to the compensation paid to Meaghan Harkins, Paul Harkins, and

4

Anthony Scott Fister." Doc. 113-3 at 10. NMSU searched emails with the following key word searches (1) "track and coach (salary and pay and contract and applicants)"; (2) "cross-country" and (coach and salary or pay or contract or applicants)"; (3) "track and coach and salary or pay or contract or applicants"; and (4) "cross-country and coach and salary or pay or contract or applicants." Doc. 106-1 at 2–3. The USA argues that "these searches were not reasonably tailored to uncover the information sought." Doc. 117-1 at 8. I agree with the USA.

The USA proposes that NMSU search the email addresses of all individuals involved in salary-setting for Ms. Harkins and her comparators, including Kathy Agnew and Dorothy Anderson, for the search terms "Meaghan," "Harkins," "Gregory," or "Fister" for the time period of 2007–2012. Although NMSU argues that the search terms proposed by the government will return a greater number of non-responsive documents than responsive documents, this is not a particular and specific demonstration of fact, but is, instead, a conclusory argument by counsel. *See Velasquez*, 229 F.R.D. at 200. NMSU's motion for a protective order with regard to RFP No. 8 is DENIED.

NMSU will perform a search of the email addresses of all individuals involved in salary-setting for Ms. Harkins and her comparators, including Kathy Agnew and Dorothy Anderson, to include the search terms "Meaghan," "Harkins," "Gregory," or "Fister" for the time period of 2007–2012. If this search results in voluminous documents that are non-responsive, NMSU may further search the results by including terms such as "cross-country," "track," "coach," "salary," "pay," "contract," or "applicants," or other appropriate terms such as "compensation," which may reduce the results to those communications most likely relevant to this case, and which would not encompass every "Meaghan" or "Gregory" in the system. However, the Court will

5

require NMSU to work with the USA to design an appropriate search if it seeks to narrow the search beyond the four search terms requested by the United States.

### B. Request for Production No. 10

RFP No. 10 seeks

> documents related to any questions, concerns or complaints made by Meaghan Harkins to NMSU concerning her pay and any actions NMSU took in response, including, but not limited to, documents reflecting any communications between NMSU employees, National Collegiate Athletic Association ("NCAA") officials, or others concerning any such questions, concerns or complaints or any resolutions taken, proposed, or considered.

Doc. 113-3 at 10. As the USA points out, the Court already has ordered NMSU to "provide a full and complete response" to RFP 10, to include all documents created after 2011. Doc. 117-1 at 10 (citing Doc. 78 at ¶ 8(m). NMSU performed searches for ESI using "athletics," "team," and "equal pay." Doc. 127 at 14. The Court agrees with the USA that these terms would not necessarily yield all responsive communications and, therefore, DENIES NMSU's motion for protective order with regard to RFP No. 10.

NMSU will search the email accounts of the ten individuals who were interviewed by the Department of Justice in November 2015 and all individuals who have worked in the Office of Institutional Equity (the office that investigates complaints of discrimination,) ("OIE"), and include the search terms "Meaghan," "Gregory," or "Harkins" from March 2011 to the present. Doc. 117-1 at 10–11. I agree that the use of these search terms could return relevant information "since responsive communications may refer to Ms. Harkins without using her complete first and last name." *Id*. at 11.

### C. Request for Production No. 24

RFP No. 24 requests

> any and all documents relating to any oral or written complaints of pay discrimination made by any coach (or individual functioning as a coach), athletic trainer, or graduate assistant in the Athletics Department to NMSU personnel, the EEOC, or any other person or entity, including, but not limited to, communications documenting or discussing the complaint, documents relating to any investigations of the complaint, and documents related to actions taken in response to the complaint.

Doc. 113-4 at 9–10. NMSU conducted a search of the cases and correspondence of the Office of Institutional Equity using the search terms "athletics," "team," and "equal pay." Again, these limited terms would not encompass all of the terms one may use when describing pay discrimination, and the motion for protective order is DENIED with respect to RFP 24.

NMSU will conduct searches of the OIE databases, OIE employee's email accounts, and the email accounts of all head coaches, sport administrators, HR liaisons working within the Athletics Department, assistant or associate Athletic Directors, and/or Athletic Directors employed by NMSU between 2007 and the present. The USA suggests that NMSU conduct a search for terms that are functionally equivalent to a search for (pay or compensate! or salary) and (discriminat! or fair! or unfair!). Doc. 117-1 at 13. If NMSU cannot search with "Boolean" connectors as suggested, it must search for the terms "pay" or "compensate" or "salary" and "discriminate" or "fair" or "unfair" and the various derivatives of these terms (for example the search would include "compensate" and "compensation"). The parties are to work together to determine what terms will be used to search these databases and email accounts.

The parties are reminded that:

> Electronic discovery requires cooperation between opposing counsel and transparency in all aspects of preservation and production of ESI. Moreover, where counsel are using keyword searches for retrieval of ESI, they at a minimum must carefully craft the appropriate keywords, with input from the ESI's custodians as to the words and abbreviations they use, and the proposed methodology must be quality control tested to assure accuracy in retrieval and

7

elimination of "false positives." It is time that the Bar—even those lawyers who did not come of age in the computer era—understand this.

*William A. Gross Const. Assocs., Inc*., 256 F.R.D. at 136.

## IV. Conclusion

IT IS THEREFORE ORDERED that defendants New Mexico State University and New Mexico State University Board of Regents' motion for protective order (Doc. 106) is DENIED. NMSU will conduct additional searches in accordance with the instructions in this order.

If the parties need additional time to complete these searches or conduct additional discovery, the parties will confer and submit a joint motion and proposed order to the Court. To the extent the parties are unable to agree, the parties will contact the Court for a telephonic hearing to resolve any further disputes.

IT IS SO ORDERED.

_____
Laura Fashing
United States Magistrate Judge