UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                                      No. 16-CV-911-JAP-LF

NEW MEXICO STATE UNIVERSITY
and NEW MEXICO STATE
UNIVERSITY BOARD OF REGENTS,

    Defendants.

## MEMORANDUM OPINION AND ORDER

The United States of America (Plaintiff or the United States) filed suit against Defendants New Mexico State University and New Mexico State University Board of Regents (collectively, Defendants or NMSU) to enforce the provisions of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*.[1] The United States alleges that Defendants engaged in pay discrimination against former NMSU employee Meaghan Harkins (Ms. Harkins) in violation of Title VII. Defendants filed a Motion for summary judgment that has been thoroughly briefed.[2] The Court will deny the Motion because material facts remain in dispute.

    I.       BACKGROUND

NMSU is a public university with an athletics department that includes a track and field program. From 2007 through 2011, this program consisted of men's and women's cross country

---

[1] *See* COMPLAINT (Doc. No. 1).
[2] *See* NEW MEXICO STATE UNIVERSITY'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (Doc. No. 141) (Motion); UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 187) (Response); NEW MEXICO STATE UNIVERSITY'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (Doc. No. 225) (Reply); UNITED STATES OF AMERICA'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 250); DEFENDANT'S RESPONSE TO PLAINTIFF'S SUR-REPLY RELATING TO ITS MOTION FOR SUMMARY JUDGMENT (Doc. No. 258).

teams and a women's track and field team. The cross country teams competed during the fall season, while the women's track and field team competed during the winter indoor season and the spring outdoor season. Generally, the female cross country athletes were also members of the women's track and field team, and they would compete during all three seasons. NMSU did not sponsor a men's track and field team, but the male cross country athletes were allowed to practice with the women's track and field team during the winter and spring seasons. The men could participate in up to five track and field meets during the spring outdoor season. They did not compete during the winter indoor season.

Ms. Harkins began working at NMSU in January of 2008 as a volunteer coach for the track and field program. She held a USA Track and Field (USATF) Level I Certification and had previously coached cross country and track at Cohoes High School, at the College of Saint Rose, and at Brown University, although the parties dispute the extent of her experience in these positions.[3] NMSU hired Ms. Harkins as a part-time track and field specialist in March 2008, and then moved her into a full-time position as an assistant coach in July 2009. By the time she became an assistant coach, Ms. Harkins had gained 16 more months of collegiate coaching experience at NMSU.[4] Ms. Harkins' responsibilities remained the same throughout her paid

---

[3] The United States asserts that Ms. Harkins had approximately five years' experience when she first came to NMSU—three years at Cohoes High School, 6 months at the College of Saint Rose, and 17 months at Brown University. *See* Resp. Statement of Disputed Facts (SDF) 9, Ex. 5, Ms. Harkins Depo. 17:11–18:15, 22:4–17, 30:2–14; Additional Material Facts (AMF) G, Ex. 5 35:16–36:6. Defendants do not dispute the dates on Ms. Harkins' resume, but they attempt to reduce her experience because she held other positions concurrent with some of her coaching. They refer to Ms. Harkins as a "volunteer coach" at Cohoes because she was also a teacher, and they credit her with only one and a half years of experience despite their admission that she was paid to coach during her entire three year employment at Cohoes. Similarly, they do not count any of her experience at the College of Saint Rose because she was both an NCAA compliance officer and an assistant coach. *See* Mot. Undisputed Material Facts (UMF) 11; Reply UMF 11–12. While Defendants argue for these calculations in their briefing, they present no evidence as to how NMSU actually evaluated Ms. Harkins' experience at the time she was hired.

[4] Defendants omit the 16 months Ms. Harkins worked at NMSU before she became an assistant coach but give no reason for this omission and present no evidence as to how Ms. Harkins' experience was actually evaluated when she became an assistant coach. *See* Reply UMF 11. The United States argues that Ms. Harkins had over six years' coaching experience at that point, including 39 months of paid collegiate cross country and track and field coaching at the College of Saint Rose, Brown University, and NMSU. *See* Resp. SDF 9, Ex. 5 43:13–44:5, 49:1–18.

employment at NMSU, regardless of her change in title. She coached the men's and women's distance and middle distance runners, and she assisted with recruitment, team travel, coordination of practices and competitions, and various administrative tasks such as ordering equipment, serving as an academic liaison, and providing athletes with nutritional counseling. Her starting annual salary as an assistant coach was $23,998.43, which was the amount that had been budgeted for her position.

In addition to Ms. Harkins, the NMSU track and field program employed a head coach, Orin Richburg (Mr. Richburg), and two male assistant coaches, Paul Harkins (Mr. Harkins) and Anthony Scott Fister (Mr. Fister). Ms. Harkins, Mr. Harkins, and Mr. Fister were all full-time coaches hired under the same official job title and description, but their actual coaching duties were not identical. Ms. Harkins and Mr. Harkins both coached primarily distance and middle distance runners and divided up recruitment and administrative tasks. While Mr. Fister was authorized to coach both the track and field team and the cross country teams, he focused on field events and in fact coached only certain female track and field athletes. Mr. Fister did not coach during the cross country season, he recruited only for specific field events, and he had limited administrative duties. However, the parties dispute the scope of Ms. Harkins' duties as compared to those of Mr. Harkins and Mr. Fister.[5]

---

[5] Defendants assert that NCAA rules limited Ms. Harkins' position to working only with cross country, not women's track and field, and that Ms. Harkins was aware of these limitations. *See* Mot. UMF 8–9, Ex. A, Cartwright Depo. 60:7–62:19. Plaintiff argues that Ms. Harkins was expected to and did coach and recruit for both cross country and track and field. It maintains that NCAA did not limit Ms. Harkins' recruiting duties and that NMSU was aware that Ms. Harkins was coaching track and field and it approved of her actions. *See* Resp. SDF 6–7, Ex. 1, Cartwright Depo. 103:18–105:2; Ex. 5 86:2–87:2, 120:5–14; Ex. 6, Mr. Harkins Depo. 36:13–38:3; AMF H–I, Ex. 7, Sun News Article; Ex. 5 43:13–44:5, 48:6–49:21; Ex. 6 31:20–32:11; AMF N–O, Ex. 2, Richburg Depo. 232:2–24, 238:4–16, 240:15–19, 241:12–242:4, 247:17–248:10; Ex. 5 54:25–56:25, 57:6–61:5, 65:11–68:1; Ex. 6 25:20–26:5; Ex. 19, 2011 Performance Review; AMF X–GG, Ex. 2 43:21–44:4, 45:5–15, 58:9–59:4, 221:14–223:15, 291:4–7, 302:15–303:17, 313:6–314:6, 316:9–317:15; Ex. 3, Boston Depo. 62:17–63:16, 208:3–18; Ex. 11, 2009 Performance Review; Ex. 19, Ex. 31, Cartwright Depo. 20:16–19, 36:10–37:14; Ex. 32, 2001 Job Description; Ex. 33, 2009 Job Description; Ex. 34–37, Media Guides; Ex. 38, Ms. Harkins' Biography; Ex. 39, Hall Depo. 32:8–33:8; Ex. 40, 2010 Performance Review. Plaintiff also contends that Mr. Fister had fewer responsibilities than Ms. Harkins. *See* Resp. SDF 5–7; AMF H–I, L–P, R–S, W–GG; Ex. 1 103:18–104:19; Ex. 5 86:2–87:2, 120:5–14; Ex. 6 36:13–38:3.

Defendants paid Mr. Harkins and Mr. Fister more than they paid Ms. Harkins. NMSU hired Mr. Harkins as an assistant coach in August 2007 for an annual salary of $29,500.00, although only $23,660.00 had been budgeted for his position. At the time he was hired, Mr. Harkins had a Master's Degree in Health Promotion and Wellness Management, USATF Level I Certification, three years' experience coaching college cross country, and just over two years' experience coaching high school cross country, only one year of which was paid. In July 2008 Mr. Harkins' annual salary was raised to $30,090.00, where it remained until he resigned in September 2011.

NMSU also hired Mr. Fister as an assistant coach in August 2007. At that time, Mr. Fister had a Bachelor's Degree in Physical Education-Exercise Science and Sports Medicine, and he held USATF Level I and Level II Certifications in Throws, Jumps, Sprints/Hurdles, and Multievents. He had approximately three and a half years of post-degree experience as a paid coach at the university level, including two prior years working at NMSU as an assistant coach. Mr. Fister had also previously coached track and field at several high schools and universities, in addition to private coaching and work with a youth track and field club that he owned. However, much of this experience was unpaid and/or took place before Mr. Fister earned his Bachelor's Degree, and his private coaching was intermittent and often concurrent with his high school coaching. Additionally, none of Mr. Fister's high school coaching or private coaching, other than the track club, appeared on the resume Mr. Fister submitted to NMSU when he applied for his position. The amount budgeted for Mr. Fister's position was $26,712.89, but he was hired at an annual salary of $28,000.00. In July 2008 Mr. Fister's annual salary was raised to $28,560.00, where it remained throughout Ms. Harkins' employment. The parties dispute the amount of Mr.

---

Defendants do not dispute the limited nature of Mr. Fister's actual duties, but they argue that this is immaterial since his position was authorized to coach both sports. *See* Reply UMF 8.

Fister's experience and the degree to which NMSU was aware of any experience Mr. Fister did not list on his resume at the time that it hired him and set his salary.[6]

From 2007 through 2011, the Athletic Director, the Sport Administrator, and the Head Coach were officially responsible for setting the assistant coaches' salaries at NMSU. Salaries were supposed to be based on consideration of the person's duties, experience, and education, in addition to market data and the budgeted salary for the position. Once a proposed salary had been determined by the Athletics Department, NMSU's Human Resource Services (HRS) was to review the salary proposal and conduct an equity review comparing it to the salaries for other individuals in the same or similar positions. HRS would then require the department to justify any disparity by pointing to differences in the position or the qualifications of the applicant. NMSU considered prior coaching experience at the university level to be directly related to an assistant coaching position, and therefore gave it more weight than high school coaching experience. When comparing salaries, NMSU did not generally take into account any experience that had been gained prior to earning the degree that was required for the position, nor did it consider unpaid volunteer experience.

However, the specific process by which the salaries for Mr. Harkins, Mr. Fister, and Ms. Harkins were actually determined is unclear. No evidence was presented as to how the salaries

---

[6] Defendants state that Mr. Fister had 5 years each of high school and college coaching experience and more than ten years of private coaching, including operating a track and field club for two years. UMF 12; Ex. E 21:1–4, 50:2–16, 65:1–17, Depo. Ex. 4, Fister Resume. The United States argues that Mr. Fister had approximately three and a half years of experience as a paid college-level coach, approximately two years of experience coaching high school, all but one season of which was unpaid and prior to earning his Bachelor's Degree, and approximately 6 months of experience operating a track and field club. Additionally, it asserts that NMSU was not aware of Mr. Fister's high school or private coaching experience other than his track and field club and NMSU did not consider his unpaid or pre-graduation experience when setting his salary. *See* AMF T, NN, PP–QQ; SDF 10; Ex. 2 133:15–135:3, 140:24–143:17; Ex. 26, Fister Application; Ex. 27, Fister Depo. 20:6–20, 32:9–15, 35:3–36:17, 36:25–37:9, 37:14–38:6, 39:21–40:7, 40:20–22, 49:7–50:12, 56:14–57:21, 65:9–17, 65:21–67:1, 67:14–68:10, 69:3–71:1, 75:2–6, 94:1–96:24; Ex. 32–33; Ex. 41, Agnew Depo. 55:11–13, 61:1–4. In reply, NMSU maintains that Mr. Fister had six and a half years of experience as a college coach, but it mischaracterizes the United States' assertion of facts as supporting this statement and it does not cite other evidence. *See* Reply UMF 12. NMSU also appears to miscalculate the amount of Mr. Fister's private coaching experience. *See id.* (referring to two years of May–July coaching as 12 months). And it maintains without support that Mr. Fister had over ten years of private coaching experience.

for Mr. Harkins or Mr. Fister were set. The parties dispute the facts concerning how Ms. Harkins' salary was set.[7] Most of the individuals officially responsible for setting Ms. Harkins' salary deny any involvement or have no recollection of the process. Defendants admit that HRS did not conduct an equity review before NMSU hired Ms. Harkins as a track and field specialist in 2008 and that they have no evidence that HRS conducted an equity review before Ms. Harkins became an assistant coach in July 2009.[8] Ms. Harkins complained about the pay discrepancy in March 2011, and NMSU compared her salary to market data. Based on this survey NMSU concluded Ms. Harkins' salary was $7,650.00 under market. In July 2011 Ms. Harkins received a raise to $26,079.00 per year, a figure that was still $5,570.00 under market and was less than the starting salaries of both male assistant coaches. Ms. Harkins then tendered her letter of resignation in September 2011. She resigned in December 2011.

On May 10, 2012, Ms. Harkins filed a charge of discrimination against NMSU with the Equal Employment Opportunity Commission (EEOC). The EEOC investigated the charge and found reasonable cause to believe that Defendants had discriminated against Ms. Harkins with

---

[7] The United States contends that Athletic Director Dr. McKinley Boston (Dr. Boston), Sports Administrator James Hall (Mr. Hall), Associate Athletic Director of Business and Finance Ermelinda Quintela (Ms. Quintela), and Mr. Richburg all offer inconclusive or contradictory testimony as to whether and to what degree they were actually involved in setting the salaries for Ms. Harkins or the other assistant coaches at NMSU and what the reasons were for setting a particular salary. *See* AMF RR–DDD. Dr. Boston said that he must have been involved in deciding Ms. Harkins' salary, but he did not specifically recall doing so. Resp. Ex. 3, 156:19–23, 157:10–14. Dr. Boston stated that Ms. Harkins' salary was based on her inexperience, her limited duties, and budgetary constraints. Resp. Ex. 3, 117:15–17, 156:24–158:14, 161:2–10, 166:5–13. However, he was not sure of the alleged limitations on Ms. Harkins' position, and he focused primarily on Ms. Harkins' alleged inexperience. He did not review her experience personally and he did not remember anything specific about it, but he stated that Mr. Richburg had informed him that Ms. Harkins was inexperienced and Ms. Quintela would have verified that. He testified that he could have moved money to pay her more but he was "comfortable" with the offered salary because of salary surveys, which he also testified did not contain any information about her position. Ex. 3, 114:21–115:9, 116:13–17, 150:25–151:6, 156:19–158:14, 162:6–17. Mr. Richburg denied any involvement in setting Ms. Harkins' salary. Resp. Ex. 2, 197:9–14. Ms. Quintela denied evaluating Ms. Harkins' experience. Ex. 4, 23:19–24:6. The United States has presented evidence that Ms. Harkins' experience was comparable to that of the male assistant coaches. Defendants assert that Ms. Harkins' salary was set based on the budgeted amount, but they do not resolve the conflicting and inconclusive evidence. *See* Reply UMF 10.

[8] Defendants assert that no equity review is required if the proposed salary for the new coach is less than that of the existing coaches. *See* Reply UMF 11, Ex. 3 51:17–52:12. The United States contends that no one at NMSU ever properly evaluated Ms. Harkins' qualifications when setting her salary. SDF 5, 8.

respect to compensation because of her sex. After voluntary conciliation was unsuccessful, the EEOC referred the matter to the United States Department of Justice. On August 11, 2016, the United States filed a claim against Defendants on behalf of Ms. Harkins. The United States requested that the Court enjoin Defendants from discriminating in violation of Title VII, award backpay and all other appropriate monetary relief to Ms. Harkins, and order Defendants to institute policies and training to ensure a nondiscriminatory workplace. Plaintiff's claim is brought under federal law, and accordingly the Court has jurisdiction over this matter under 28 U.S.C. § 1331. Defendants have asked the Court to enter summary judgment in their favor.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the Court "'view[s] all evidence and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party.'" *Riser v. QEP Energy*, 776 F.3d 1191, 1195 (10th Cir. 2015) (quoting *Croy v. Cobe Labs. Inc.*, 345 F.3d 1199, 1201 (10th Cir. 2003). A "material" fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).

## III. DISCUSSION

Title VII prohibits pay discrimination based on gender. 42 U.S.C. § 2000e-2(a)(1). To prove its Title VII claim, Plaintiff has the ultimate burden of proving that Defendants intentionally discriminated against Ms. Harkins. *See Riser*, 776 F.3d at 1199. Plaintiff may

"establish this by either direct evidence or circumstantial evidence that creates an inference of intentional discrimination." *Id.*

> Where a plaintiff seeks to use circumstantial evidence to show discriminatory intent, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) applies. First a plaintiff must establish a prima facie case of pay discrimination. If the plaintiff succeeds, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. If the defendant does so, the burden shifts back to the plaintiff to show that his or her protected characteristic was a determinative factor in the defendant's employment decision or that the defendant's explanation was merely pretextual.

*Id.* at 1199–1200 (internal citations and quotation marks omitted). To defeat the motion for summary judgment, Plaintiff must "make a sufficient showing on [each] essential element of [its] claim] with respect to which [it] has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To establish its prima facie case, Plaintiff must prove that Ms. Harkins "'occupie[d] a job similar to that of higher paid males.'" *Riser*, 776 F.3d at 1200 (quoting *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1363 (10th Cir. 1997)). In making this determination, the Court compares the duties and responsibilities of the positions. *See id.* at 1196, 1200. The similarity requirement under Title VII is less stringent than under the Equal Pay Act (EPA), which requires that the work be "'substantially equal'" in that it entails "'equal skill, effort, and responsibility.'" *Id.* (quoting 29 U.S.C. § 206(d)(1)). "[J]obs that are merely alike or comparable are not 'substantially equal' for purposes of the EPA." *Id.* at 1196. But "even when jobs are not sufficiently similar to constitute 'equal work' under the EPA, a Title VII claim for wage discrimination is not precluded[.]" *Sprague*, 129 F.3d at 1362 (quoting *Loyd v. Phillips Brothers, Inc.*, 25 F.3d 518, 525 (7th Cir. 1994)). *See also County of Washington v. Gunther*, 452 U.S. 161,

168–71, 178–81 (1981) (Plaintiff need not prove equal work to proceed on a Title VII claim for discriminatory undercompensation).

Defendants contend first that Plaintiff's claim must fail because Ms. Harkins' limited duties differentiate her job from those of Mr. Harkins and Mr. Fister. Defendants rely primarily on Mr. Cartwright's deposition testimony that due to NCAA rules Ms. Harkins was hired as an assistant coach to the cross country teams only, while Mr. Fister and Mr. Harkins were able to coach the track and field team in addition to cross country. However, the United States argues that Ms. Harkins' duties and responsibilities were similar to, and at least as demanding as, those of Mr. Harkins and Mr. Fister. The United States has presented evidence that the alleged NCAA limitations were not enforced in practice and that NMSU expected Ms. Harkins to coach and recruit for both cross country and track and field, was aware that she was doing so, and approved of her actions. Ms. Harkins testified that she was told her position would be "technically a men's cross country title" but that her "actual job description could vary from that." Resp. Ex. 5, 86:2–10. Defendants attempt to mischaracterize Ms. Harkins' testimony in asserting that she admitted knowledge of the restrictions, *see* Reply UMF 9, when in fact she stated that she understands the NCAA limitation "now, in retrospect." Resp. SDF 7, Ex. 5, 86:19–87:2. Ms. Harkins and Mr. Harkins testified that supervisory personnel were aware that Ms. Harkins was coaching both teams and approved of her doing so. *See* Resp. SDF 7, Ex. 5 43:13–44:5, 48:6–49:21, Ex. 6, 31:20–32:11, 36:13–38:3. Media and personnel records support this. *See* Resp. Ex. 7, 11, 19, 32–38, 40.

Plaintiff presented evidence that Ms. Harkins coached and recruited during all three seasons, while Mr. Fister did not actually coach the cross country teams, although he may have been authorized to do so, and he did not coach at all during the cross country season. Further,

9

Mr. Fister had fewer administrative responsibilities than Ms. Harkins. *See* Resp. Ex. 1 103:18–104:19; Ex. 5 86:2–87:2, 120:5–14; Ex. 6 36:13–38:3. Defendants do not dispute the limited nature of Mr. Fister's actual duties. They argue that his responsibilities are immaterial, but the similarity of positions is determined by the work performed, not by the job description or title. *See Riser*, 776 F.3d at 1196, 1200.

Plaintiff's burden at the prima facie stage is "'not onerous[.]'" *Orr v. City Of Albuquerque*, 417 F.3d 1144, 1149, 1152 (10th Cir. 2005) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has made a sufficient showing that Ms. Harkins' job duties were similar to those of the higher-paid male assistant coaches.

Defendants suggest that Ms. Harkins had less experience than Mr. Harkins and Mr. Fister, and that this factor should also be considered in determining whether their positions were similar. The similarity of duties and responsibilities is not generally determined by the nature of the employee, but Courts have sometimes considered background and experience in assessing the similarity between positions. *See, e.g.*, *Block v. Kwal-Howells, Inc.*, 92 F. App'x 657, 660 (10th Cir. 2004). This may be logical when vast differences in experience suggest that one position would have assumed a de facto supervisory role. However, in this case the required qualifications for all three assistant coaches were the same, and Defendants do not allege so great a difference in experience that a presumptive hierarchy would differentiate the jobs despite their similar duties. Under these circumstances, the Court believes that a detailed inquiry into the qualifications of Ms. Harkins as compared to Mr. Fister and Mr. Harkins is more appropriately undertaken when considering Defendants' asserted justifications for the disparity in salaries. The

Court concludes that Plaintiff has adequately established a prima facie case of pay discrimination under Title VII.

Defendants articulated three legitimate reasons for paying Ms. Harkins less than they paid Mr. Harkins or Mr. Fister: (1) her job duties were limited, (2) she was less qualified, and (3) NMSU was constrained by its budget. The burden therefore shifts back to Plaintiff to prove that these explanations are pretextual. "Pretext can be shown by 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Riser*, 776 F.3d at 1200 (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). The United States contends that Defendants' asserted reasons are implausible because Ms. Harkins' actual duties were not more limited than those of the other assistant coaches, she was not less qualified, and her salary was not set based on any perceived limitations in her position, lack of education or experience, or budgetary constraint.

The United States disputes whether any limitations on Ms. Harkins' coaching or recruiting responsibilities under NCAA rules were ever communicated to Ms. Harkins or applied to her assigned duties in practice. It presents evidence that Ms. Harkins was unaware of any limits to her duties, that she coached and recruited for both the cross country teams and the track and field team with the knowledge and approval of her supervisors, and that she actually had greater responsibilities than Mr. Fister. The United States further disputes that Ms. Harkins was less qualified than Mr. Fister or Mr. Harkins, and it presents evidence that her background at the time she was hired as an assistant coach was comparable to the education and experience that the male assistant coaches possessed on their dates of hire. Additionally, the United States argues

that no alleged limitation on her duties or deficiency in her qualifications was actually used by NMSU as the basis for her lower salary. It presents evidence of conflicting testimony as to who was responsible for setting Ms. Harkins' salary and what their reasons were for doing so. Finally, the United States presents evidence that suggests Ms. Harkins' salary was not limited by Defendants' budget, because both Mr. Harkins and Mr. Fister were hired at salaries above the amount originally budgeted for their positions, and Dr. Boston testified that he could have similarly funded a higher salary for Ms. Harkins. The Court finds that this evidence is sufficient to create genuine issues of material fact such that a reasonable juror could conclude that Defendants' explanations are pretextual.

IT IS THEREFORE ORDERED that NEW MEXICO STATE UNIVERSITY'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (Doc. No. 141) is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE