UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                        No. 16-CV-911-JAP-LF

NEW MEXICO STATE UNIVERSITY
and NEW MEXICO STATE
UNIVERSITY BOARD OF REGENTS,

    Defendants.

## MEMORANDUM OPINION AND ORDER

The United States of America (Plaintiff or the United States) filed suit against Defendants New Mexico State University and New Mexico State University Board of Regents (collectively, Defendants or NMSU) to enforce the provisions of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*[1] The United States alleges that Defendants engaged in pay discrimination against former NMSU employee Meaghan Harkins (Ms. Harkins) in violation of Title VII. Defendants filed a motion to dismiss this suit under the doctrine of laches.[2] The United States responded in opposition to the motion and filed a cross-motion for summary judgment, arguing that laches is inapplicable to this case.[3] Both motions have been fully briefed.[4] The Court will deny the Motion

---

[1] *See* COMPLAINT (Doc. No. 1).
[2] *See* DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Doc. No. 146) (Motion).
[3] *See* UNITED STATES' CROSS-MOTION FOR SUMMARY JUDGMENT (Doc. No. 189); UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (DOC. NO. 146) (Doc. No. 190); MEMORANDUM IN SUPPORT OF THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS (DOC. NO. 190) AND CROSS-MOTION FOR SUMMARY JUDGMENT (DOC. NO. 189) (Doc. No. 191) (Cross Motion).
[4] *See* RESPONSE IN OPPOSITION TO PLAINTIFF'S COUNTER-MOTION TO DEFENDANT'S MOTION TO DISMISS (Doc. No. 214); REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS (Doc. No. 226); UNITED STATES' REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT (Doc. No. 236).

to dismiss, will grant summary judgment to Plaintiff, and will prohibit Defendants from further attempts to raise laches as an affirmative defense.

I.  **BACKGROUND**

Plaintiff alleges that because of Ms. Harkins' gender, Defendants paid her less than they paid two male employees in similar positions. The factual background of this claim is set forth in the Court's Memorandum Opinion and Order denying summary judgment (Doc. No. 259), and the Court will not repeat it here. After she left Defendants' employment, Ms. Harkins notified the Albuquerque office of the EEOC that she wished to pursue a charge of gender-based discrimination against Defendants. Doc. No. 191, Ex. 2. On May 11, 2012, the EEOC transferred the charge to the El Paso Area EEOC office for investigation. Doc. No. 146, Ex. E; Doc. 191, Ex. 3. Defendants received notice of the charge on May 15, 2012. Doc. No. 191, Ex. 1; Doc. No. 214, Ex. 1.

The EEOC requested specific documents and information from Defendants, but also informed Defendants that the requested items were not necessarily all that would be required to resolve the charge. Doc. No. 214, Ex. 2. The EEOC instructed Defendants to retain all personnel records that were relevant to the charge until final disposition of the matter, which it defined as the termination of litigation or the expiration of the period in which suit could be filed. Doc. No. 236, Ex. 3. On August 2, 2013, the EEOC issued a Letter of Determination informing Defendants that it had found reasonable cause to believe that Defendants had discriminated against Ms. Harkins due to her gender. Doc. No. 146, Ex. F. Efforts by the EEOC to negotiate a settlement with Defendants were unsuccessful. Doc. No. 146, Ex. G. On May 13, 2014, the EEOC notified Defendants that the charge was being sent to the Department of Justice (DOJ) for possible litigation. *Id.*

DOJ notified Defendants on January 7, 2015, that it was beginning investigation of the charge. Doc. No. 191, Ex. 6. It conducted interviews and requested information and documentation, noting Defendants' obligation to retain all relevant documents even if DOJ had not requested that they be produced. *See* Doc. No. 191, Ex. 7–Ex. 11. On March 31, 2016, DOJ informed Defendants of its determination that NMSU had discriminated against Ms. Harkins in violation of Title VII. Doc. No. 191, Ex. 13. DOJ stated that it would file suit against Defendants by May 3, 2016 unless Defendants chose to enter into a consent decree that DOJ found acceptable. *Id.* This deadline was postponed while the parties engaged in settlement discussions, but the negotiations were unsuccessful and DOJ filed its Complaint (Doc. No. 1) on August 11, 2016. Doc. No. 191, Ex. 30. Defendants contend that Plaintiff's claim is barred by the doctrine of laches.

## II. LEGAL STANDARD

Defendants filed their Motion under Federal Rule of Civil Procedure 12(b)(6) even though they had previously answered the Complaint.[5] The Court might have considered the motion as one for judgment on the pleadings under Rule 12(c), but Defendants also attached 74 pages of exhibits to their motion, including deposition testimony, an employment contract, and documents related to the Equal Employment Opportunity Commission (EEOC) investigation into Ms. Harkins' charge of discrimination. "When a party presents matters outside of the pleadings for consideration, as a general rule 'the court must either exclude the material or treat the motion as one for summary judgment.'" *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (quoting *Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004)). Defendants ask the Court to convert their motion to dismiss to one for summary judgment. Because Plaintiff acknowledges that it has received notice of the conversion, the Court

---

[5] *See* ANSWER OF DEFENDANTS TO PLAINTIFF'S COMPLAINT (Doc. No. 20) (Answer).

will consider the motion and supporting materials under Rule 56. Plaintiff has presented materials outside the pleadings in support of its response to Defendants' motion and in support of its own cross-motion for summary judgment. *See* Fed. R. Civ. P. 12(d) ("All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When both parties have moved for summary judgment the Court will analyze each motion individually and on its own merits. *See Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) (explaining that "[c]ross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."). The Court "'view[s] all evidence and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party.'" *Riser v. QEP Energy*, 776 F.3d 1191, 1195 (10th Cir. 2015) (quoting *Croy v. Cobe Labs. Inc.*, 345 F.3d 1199, 1201 (10th Cir. 2003).

Cross-motions for summary judgment entitle the Court "to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quoting *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997)). "A fact is material only if it might affect the outcome of the suit under the governing law. And a dispute over a material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1265–66 (10th Cir. 2015). "Where the facts are not in dispute . . . , summary disposition is appropriate." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007).

## III. DISCUSSION

Defendants make two claims in their Motion: first, that Ms. Harkins did not file suit within the requisite time after EEOC issued its notice that conciliation had failed; and second, that laches bars the United States from bringing this claim on Ms. Harkins' behalf. Defendants do not expand on their first claim, and it has no merit. Ms. Harkins was never issued a Notice of Right to Sue so as to trigger a statutory time limit because DOJ chose to litigate this matter. *See* 42 U.S.C. § 2000e-5(f)(1); *EEOC v. W.H. Braum, Inc.*, 347 F.3d 1192, 1200 (10th Cir. 2003) ("one of the policies behind the required issuance of the right-to-sue letter is that it initiates the running of the statute of limitations for private actions" (internal quotation marks omitted)); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 291 (2002) (If the EEOC decides to sue, "the employee has no independent cause of action, although the employee may intervene in the EEOC's suit.").

As to their second claim, Defendants assert that the Court lacks jurisdiction over Plaintiff's suit because Defendants have been prejudiced by Plaintiff's delay in filing its Complaint. Laches is an equitable defense that may apply when a plaintiff's lack of diligence in pursuing a claim causes harm to a defendant. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002). The existence of laches is not a jurisdictional matter, but depends upon the circumstances of the case and "'is a question primarily addressed to the discretion of the trial court.'" *Biodiversity Conservation All. v. Jiron*, 762 F.3d 1036, 1090 (10th Cir. 2014) (quoting *Burnett v. New York Central R.R. Co.*, 380 U.S. 424, 435 (1965)). Plaintiff argues that: (1) Defendants waived their right to raise the affirmative defense of laches because they failed to assert it in their Answer; (2) laches is not available against the United States in a Title VII action;

and (3) Defendants cannot establish the required elements of unreasonable delay or resulting prejudice.

A. **Waiver of the Defense**

"In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . laches[.]" Fed. R. Civ. P. 8(c). The purpose of this requirement is to give the opposing party notice of the defense and an opportunity to respond. *Ahmad v. Furlong*, 435 F.3d 1196, 1201 (10th Cir. 2006). Whether an affirmative defense may first be raised in a motion for summary judgment is determined by the same standards that govern motions to amend an answer. *Id.* at 1202. In addition to prejudice to the opposing party, "a motion to amend may also be denied on grounds such as 'undue delay, bad faith or dilatory motive ..., or repeated failure to cure deficiencies by amendments previously allowed.'" *Id.* (quoting *Harris v. Secretary, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 344–45 (D.C. Cir. 1997)). Plaintiff argues that Defendants should be precluded from raising laches in their motion because they did not seek leave to amend their Answer nor did they address the standards for constructive amendment. However, Plaintiff had notice of the defense through Defendants' Motion, and Plaintiff had the opportunity to argue against the imposition of laches in its Response and in its Cross-Motion. Plaintiff asserts that it is prejudiced by Defendants' late assertion because fact discovery has closed, but Plaintiff has not identified any facts relevant to the application of laches that are not in its possession. The Court finds that Plaintiff has not been prejudiced by the delay. No other grounds are apparent that would preclude Defendants from constructively amending their Answer. Accordingly, the Court concludes that Defendants have not waived their right to assert laches.

### B. The Assertion of Laches against the Sovereign

"[L]aches is a line of defense that usually may not be asserted against the United States." *Ute Indian Tribe of the Uintah v. Myton*, 835 F.3d 1255, 1263 (10th Cir. 2016). "It is well settled that the United States is not . . . subject to the defense of laches in enforcing its rights." *United States v. Summerlin*, 310 U.S. 414, 416 (1940). "[L]aches may not be asserted against the United States in an action brought to enforce a public right or a public interest." *United States v. Distefano*, 279 F.3d 1241, 1245 n.2 (10th Cir. 2002).

Some courts have made exceptions to this general rule under certain circumstances. *See, e.g.*, *Clearfield Trust Co. v. United States*, 318 U.S. 363, 369 (1943) (laches may be asserted against United States as drawee of commercial paper because it "stands in no different light than any other drawee" and "does business on business terms."). Generally, these exceptions have been carved out when the United States is acting only to vindicate private rights. *See, e.g.*, *Occidental Life Ins. Co. of California v. EEOC*, 432 U.S. 355, 382 (1977) (Rehnquist, J., dissenting) (The relevant inquiry in the applicability of laches against the United States is whether it acts in the public interest or only for the benefit of a private person.); *Nat'l R.R. Passenger Corp.*, 536 U.S. at 122 n.14 (Citing *Occidental* and noting that the Court did not "have occasion to consider whether the laches defense may be asserted against the EEOC" but "there seemed to be general agreement that courts can provide relief to defendants against inordinate delay by the EEOC.").

Defendants argue that laches can be applied in Title VII cases brought by the EEOC or by the United States when they are acting only to vindicate the rights of a private party. Defendants assert that this lawsuit fits in that category because it seeks to obtain compensatory relief for Ms. Harkins based on an alleged violation of her rights under Title VII. In support of this assertion,

Defendants rely on Justice Rehnquist's dissent in *Occidental*, which did not deal with laches but addressed the applicability of statutes of limitations. Justice Rehnquist, joined by Chief Justice Burger, agreed with the majority that Title VII contained no limitation on the time in which the EEOC could bring an enforcement suit, but he concluded that the relevant state statute of limitations should be applied because the EEOC was suing on behalf of a private party, not on behalf of the United States in its sovereign capacity. *Occidental Life Ins. Co.*, 432 U.S. at 374–384 (Rehnquist, J., dissenting). Justice Rehnquist noted that the United States was not a party to the suit and opined that an EEOC suit for backpay and injunctive relief was subject to state limitations periods when the aggrieved individual could have filed the suit in their own right. *Id.* at 381–384.

However, the majority in *Occidental* did not share Justice Rehnquist's opinion. The majority did not specifically address whether or not the EEOC was vindicating the public interest when it brought suit under Title VII, but it affirmed the decision of the Ninth Circuit Court of Appeals that had concluded it was. *See EEOC v. Occidental Life Ins. Co. of California*, 535 F.2d 533, 539 (9th Cir. 1976) (The EEOC vindicates public policy by suing in federal court . . . regardless of the type of relief sought . . . .. [T]he fact that private parties may benefit from public agency action does not detract from the public nature of those proceedings."). The Supreme Court majority in *Occidental* also stated that:

> [T]he EEOC does not function simply as a vehicle for conducting litigation on behalf of private parties; it is a federal administrative agency charged with the responsibility of investigating claims of employment discrimination and settling disputes, if possible, in an informal, noncoercive fashion. Unlike the typical litigant against whom a statute of limitations might appropriately run, the EEOC is required by law to refrain from commencing a civil action until it has discharged its administrative duties.

*Occidental Life Ins. Co.*, 432 U.S. at 368. It proceeded to discuss Congress' awareness of the EEOC's backlog and its decision to nevertheless assign the EEOC more responsibilities, and concluded that imposing a time limit not contained in the statute would be unreasonable. *Id.* at 368-370. But it noted that

> a defendant in a Title VII enforcement action might still be significantly handicapped in making his defense because of an inordinate EEOC delay in filing the action after exhausting its conciliation efforts. If such cases arise the federal courts do not lack the power to provide relief. This Court has said that when a Title VII defendant is in fact prejudiced by a private plaintiff's unexcused conduct of a particular case, the trial court may restrict or even deny backpay relief. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 424-425, 95 S.Ct. 2362, 2374-2375, 45 L.Ed.2d 280. The same discretionary power "to locate 'a just result' in light of the circumstances peculiar to the case," *ibid.*, can also be exercised when the EEOC is the plaintiff.

*Id.* at 373.

Numerous Circuit Courts of Appeals have relied on this language in *Occidental* to conclude that laches may be applied to bar a Title VII suit brought by the EEOC or limit the relief that EEOC may obtain. *See EEOC v. Dresser Industries, Inc.*, 668 F.2d 1199, 1202 (11th Cir. 1982); *EEOC v. Alioto Fish Co.*, 623 F.2d 86, 88 (9th Cir. 1980); *EEOC v. Massey-Ferguson, Inc.*, 622 F.2d 271, 275 (7th Cir. 1980); *EEOC v. Liberty Loan Corp.*, 584 F.2d 853, 857-858 (8th Cir. 1978); *EEOC v. Am. Nat'l Bank*, 574 F.2d 1173 (4th Cir. 1978), cert. denied, 439 U.S. 876 (1978). None of these cases appear to have considered this issue in light of the general rule prohibiting the application of laches against the sovereign when it acts in the public interest.

But the Tenth Circuit Court of Appeals has described Title VII cases brought by the EEOC as "serv[ing] to vindicate important federal as well as private interests" when the agency seeks both "relief for private individuals" such as backpay and "injunctive relief against further

violations of the Act." *Marshall v. Intermountain Elec. Co., Inc.*, 614 F.2d 260, 262 (10th Cir. 1980). The Court concluded that *Occidental* had

> effectively fashioned a new rule to deal with actions brought by the federal government to vindicate combinations of private and public interests: When an action is brought by the government to enforce private as well as public rights, state statutes of limitations do not apply to bar the action even though no federal period of limitations is provided. However, unlike the rule relating to actions brought exclusively for the benefit of the federal government, the doctrine of laches may be applied in these hybrid cases to limit relief.

*Id.* at 262. The United States Supreme Court has cast doubt on the practice of determining the interest served by an EEOC lawsuit based on the remedy sought. *See Waffle House*, 534 U.S. at 290–296 ("Rather than attempt to split the difference, we are persuaded that, pursuant to Title VII and the ADA, whenever the EEOC chooses from among the many charges filed each year to bring an enforcement action in a particular case, the agency may be seeking to vindicate a public interest, not simply provide make-whole relief for the employee, even when it pursues entirely victim-specific relief."); *see also Gen. Tel. Co. of Nw. v. EEOC*, 446 U.S. 318, 326 (1980) ("When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination."). However, the Tenth Circuit Court of Appeals has suggested, in a decision postdating *Waffle House* and *General Telephone*, that laches may still be applied to limit relief sought by the EEOC. *See W.H. Braum, Inc.*, 347 F.3d at 1200 (citing *Marshall*)). This logic appears equally applicable to Title VII suits brought by DOJ, and Plaintiff does not assert a difference between it and the EEOC. Consequently, the Court concludes that Defendants are not barred from asserting laches against Plaintiff.

### C. Elements of the Defense of Laches

Because laches is an affirmative defense, Defendants bear the burden of proving each of the essential elements. "Laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States*, 365 U.S. 265, 282 (1961). "[T]he 'lack of diligence' element [i]s met when delay was 'inexcusable,' 'unreasonable,' or 'undue;' and the 'prejudice' element [i]s met when prejudice was 'undue,' 'substantial,' or 'material.'" *Biodiversity Conservation All.*, 762 F.3d at 1091 (quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at 121–22).

#### 1. Lack of Diligence

Defendants contend that Plaintiff's unreasonable delay in filing suit is apparent because Ms. Harkins' EEOC charge was filed more than four years before Plaintiff filed its Complaint. Defendants rely on cases that examine the time between the filing of a discrimination charge with the EEOC and the filing of a lawsuit and hold that a delay of four to five years was unreasonable. *See, e.g.*, *Massey-Ferguson*, 622 F.2d at 277–78 (collecting cases that found a delay of 3–5 years unreasonable and concluding that a delay of four years and nine months was unreasonable).

Plaintiff asserts that the date Ms. Harkins filed her charge with the EEOC is irrelevant to the analysis of laches in this case because the EEOC is not a party to this suit. Instead, Plaintiff argues that the relevant time period for evaluating its diligence begins when the EEOC referred Ms. Harkins' charge to Plaintiff. "Generally speaking, the relevant delay is the period from when the plaintiff knew (or should have known) of the allegedly infringing conduct, until the initiation of the lawsuit in which the defendant seeks to counterpoise the laches defense." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 949 (10th Cir. 2002). In a case brought by the EEOC, this

would be the date a charge is filed alerting the agency to the alleged discrimination. Defendants argue that this same time frame is relevant here, but they acknowledge that Plaintiff had no authority to enforce Title VII until the EEOC issued its notice that conciliation had failed and they do not argue that Plaintiff was actually aware of the case before the referral. Defendants provide no support for their theory that the Court should attribute to Plaintiff the time period before Plaintiff knew of the claim, and the Court declines to do so. The relevant time period is the same whether a plaintiff is a private individual or a governmental agency—it runs from when the party had notice of the claim. *See id.* at 949–951 (determining when the plaintiff knew or should have known of his claim).

Plaintiff received notice of Ms. Harkins' charge by the referral from the EEOC, which occurred on May 13, 2014. After referral, the charge was assigned to a DOJ attorney for further evaluation on November 3, 2014. Doc. No. 191, Ex. 30. DOJ authorized a supplemental investigation, which Defendants received notice of on January 7, 2015. Doc. No. 191, Ex. 6. Plaintiff was in regular communication with Defendants throughout the investigation to request documents and information and to schedule a site visit and conduct interviews. Doc. 191, Ex. 7–11. On March 31, 2016 Plaintiff notified Defendants that it intended to file suit. Doc. 191, Ex. 13. It delayed filing because the parties were engaged in settlement negotiations, but filed its Complaint on August 11, 2016, after they were unable to reach an agreement. Doc. 191, Ex. 30.

The Court will exclude the time during which the parties were actively engaged in settlement negotiations, with the result being a delay of approximately one year and ten months attributable to Plaintiff. Defendants have not presented any authority suggesting that this length of time constitutes undue delay, and the Court has not located any. Plaintiff was actively investigating the case and was regularly communicating with Defendants during this time.

Considering the federal policy requiring employment discrimination claims to be investigated, *see Occidental*, 432 U.S. at 368, the Court finds that the time period of one year and ten months was reasonable. Defendants have therefore failed to prove Plaintiff's lack of diligence, an essential element of the affirmative defense of laches.

### 2. Prejudice

However, in the interests of thoroughness the Court will address the element of prejudice as well. To justify the invocation of laches, Defendants must allege specific prejudice that is a result of Plaintiff's delay. *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1208 (10th Cir. 2001). Defendants contend that they have been prejudiced because documents that are relevant to their defense have been destroyed and witnesses have forgotten the details of conversations regarding hiring, salary setting, and Ms. Harkins' alleged job restrictions. Generalized or "[c]onclusory allegations of prejudice, including allegations that witnesses have faded memories from the passage of time, are 'insufficient to establish material prejudice' for the purposes of laches." *EEOC v. Jetstream Ground Servs., Inc.*, 134 F. Supp. 3d 1298, 1332 (D. Colo. 2015) (quoting *Rodriguez-Aguirre*, 264 F.3d at 1208). Additionally, Defendants were aware of Ms. Harkins' charge since May 15, 2012, when they received notice from the EEOC. Doc. 214, Ex. 1. This was only five months after Ms. Harkins left Defendants' employment. Defendants could have memorialized witness testimony in anticipation of litigation but chose not to, and they have not provided any evidence that details now forgotten would have been recalled in May 2014, when Ms. Harkins' charge was referred to Plaintiff. *See Jetstream Ground Servs.*, 134 F. Supp. 3d at 1333.

Defendants' allegations as to documents are likewise unavailing. Defendants contend that they have been prejudiced by the destruction of unspecified records from NMSU's Office of

13

Institutional Equity, drafts, NCAA compliance records, and the equity reviews of Ms. Harkins, Mr. Fister, and Mr. Harkins. The first two of these categories are generalized allegations that will not support a finding of prejudice. The third is also general, but even if the Court were to consider the description of NCAA compliance records to be sufficiently specific, Defendants admit that their policies require these to be retained for 4–5 years, Doc. 146 at 4, so that anything from the beginning of Ms. Harkins' employment at NMSU in 2008 should still have been in Defendants' possession when Ms. Harkins' charge was filed in 2012. After the charge was filed, Defendants had a duty to retain all relevant documents until any potential litigation was concluded, whether or not the records had been specifically requested by the EEOC or would have been subject to destruction in the absence of the charge. *See* 29 C.F.R. 1602.14.

Equity reviews pertaining to the three assistant coaches are the only specific missing documents Defendants rely on to prove prejudice. NMSU polices only required the equity reviews to be retained for 3 years, so that it is possible files relating to the three coaches could have been destroyed before May 2012. However, Defendants admit that the files were not actually destroyed until October 2014. Doc. 214, Ex. 5. This was long after Defendants had notice not only of Ms. Harkins' charge, but also of the EEOC's finding of discrimination and referral of the charge to DOJ for possible litigation. Defendants cannot claim prejudice based on their own negligent destruction of documents. *See Rodriguez-Aguirre*, 264 F.3d at 1208 (difficulty or impossibility of retrieving documents did not demonstrate material prejudice when there was an affirmative duty to maintain records); *Bernard v. Gulf Oil Co.*, 596 F.2d 1249, 1257–58 (5th Cir. 1979) ("A party cannot assert the defense of laches merely because it has failed to preserve evidence despite knowledge of a pending claim." Laches is inapplicable when "[D]efendants' own negligence and disregard of EEOC regulations caused the prejudice.").

Consequently, the Court concludes that Defendants have not met their burden to prove laches, and Plaintiff is entitled to judgment as a matter of law on the affirmative defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

IT IS THEREFORE ORDERED that:

(1) DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Doc. No. 146) is DENIED;

(2) UNITED STATES' CROSS-MOTION FOR SUMMARY JUDGMENT (Doc. No. 189) is GRANTED; and

(3) Defendants are precluded from any further attempts to raise the affirmative defense of laches.

_____
SENIOR UNITED STATES DISTRICT JUDGE