**UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                                                                     **No. 16-CV-911-JAP-LF**

**REGENTS OF NEW MEXICO
STATE UNIVERSITY,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

The United States of America (Plaintiff or the United States) filed suit against Defendant Regents of New Mexico State University (Defendant or NMSU) to enforce the provisions of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*[1] The United States alleges that Defendant engaged in pay discrimination against former NMSU employee Meaghan Harkins (Ms. Harkins) in violation of Title VII. Because Defendant destroyed certain documents the United States sought to obtain through discovery, the United States has moved to exclude evidence at trial as a sanction for spoliation.[2] Defendant responds that no sanction is warranted.[3] The Court will grant the Motion in part and deny the Motion in part.

    **I.    BACKGROUND**

Plaintiff alleges that because of Ms. Harkins' gender, Defendant paid her less than it paid two male employees in similar positions. The factual background of this claim is set forth in the

---

[1] *See* COMPLAINT (Doc. No. 1).
[2] *See* UNITED STATES' MOTION FOR SPOLIATION SANCTIONS (Doc. No. 290); UNITED STATES' REPLY IN SUPPORT OF ITS MOTION FOR SPOLIATION SANCTIONS (Doc. No. 303).
[3] *See* DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS (Doc. No. 298).

Court's Memorandum Opinion and Order denying summary judgment (Doc. No. 259), and the Court will not repeat it here other than as is relevant to Plaintiff's spoliation claim. Defendant hired two male assistant coaches in August 2007, Mr. Harkins and Mr. Fister. Doc. No. 141, Ex. A. Defendant had interviewed Ms. Harkins for the position filled by Mr. Fister, but it did not hire her at that time. Doc. No. 187, Ex. 5. Ms. Harkins began volunteering with Defendant's track and field program in January 2008, and in March 2008 she was hired in a paid position. Doc. No. 141, Ex. B. Ms. Harkins remained employed by Defendant until December 2011. Doc. No. 187, Ex. 5. After her resignation, Ms. Harkins filed a charge alleging that Defendant had discriminated against her by paying her less than the male coaches. Doc. 146, Ex. E.

Defendant received notice of Ms. Harkins' gender-based discrimination charge from the EEOC on May 15, 2012. Doc. No. 191, Ex. 1; Doc. No. 214, Ex. 1. The EEOC requested specific documents and information from Defendant, but also informed Defendant that the requested items were not necessarily all that would be required to resolve the charge. Doc. No. 214, Ex. 2. The EEOC instructed Defendant to retain all personnel records that were relevant to the charge until final disposition of the matter, which it defined as the termination of litigation or the expiration of the period in which suit could be filed. Doc. No. 236, Ex. 3. The recruitment files for Ms. Harkins,[4] Mr. Harkins, and Mr. Fister were subject to destruction in 2011 or 2012 under NMSU's normal operating procedures. Doc. No. 191, Ex. 14. However, these files were still in Defendant's possession when it received notice of the EEOC charge and of its duty to retain documents. Doc. No. 214, Ex. 5.

---

[4] Defendant suggests that no recruitment file may have ever existed for Ms. Harkins because she was not hired through a competitive process. However, testimony Defendant has previously presented to the Court states that Ms. Harkins did have a recruitment file. To the extent any recruitment file did exist, it is undisputed that it was destroyed in October of 2014.

On August 2, 2013, the EEOC issued a Letter of Determination informing Defendant that it had found reasonable cause to believe that Defendant had discriminated against Ms. Harkins due to her gender. Doc. No. 146, Ex. F. Efforts by the EEOC to negotiate a settlement with Defendant were unsuccessful. Doc. No. 146, Ex. G. On May 13, 2014, the EEOC notified Defendant that the charge was being sent to the Department of Justice (DOJ) for possible litigation. *Id.*

On or about October 10, 2014, Defendant destroyed the recruitment files for Ms. Harkins, Mr. Fister, and Mr. Harkins. Doc. No. 214, Ex. 5. DOJ notified Defendant on January 7, 2015, that it was beginning investigation of the charge. Doc. No. 191, Ex. 6. It conducted interviews and requested information and documentation, noting Defendant's obligation to retain all relevant documents even if DOJ had not requested that they be produced. *See* Doc. No. 191, Ex. 7–Ex. 11. Certain requested information which may have been contained in the recruitment files was unavailable to DOJ because the files had been destroyed prior to the start of DOJ's investigation.

## II. LEGAL STANDARD

When a charge of discrimination has been filed with EEOC against an employer, the employer must preserve all relevant personnel records until the matter has been resolved. 29 C.F.R. § 1602.14. Personnel records "include[e] but [are] not necessarily limited to requests for reasonable accommodation, application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship[.]" *Id.* "'[P]ersonnel records relevant to the charge,' . . . would include personnel or employment records relating to the aggrieved person and to all other employees holding positions similar to that held . . . by the

aggrieved person . . ..” *Id.* These documents must be preserved until "the date of expiration of the statutory period within which the aggrieved person may bring an action in a U.S. District Court or, where an action is brought against an employer either by the aggrieved person, the Commission, or by the Attorney General, the date on which such litigation is terminated." *Id.*

"Spoliation includes the intentional or negligent destruction or loss of tangible and relevant evidence which impairs a party's ability to prove or defend a claim." *Browder v. City of Albuquerque*, 209 F. Supp. 3d 1236, 1243 (D.N.M. 2016) (internal quotation marks omitted). "Spoliation sanctions are proper when '(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence.'" *Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007)). "'[T]he general rule is that bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction.'" *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 988 (10th Cir. 2006) (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398 (10th Cir.1997)). "Mere negligence in losing or destroying records" will not justify an adverse inference instruction, but "the [C]ourt . . . may impose lesser sanctions absent a finding of bad faith." *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008). "'The district court has discretion to fashion an appropriate remedy depending on the culpability of the responsible party and whether the evidence was relevant to proof of an issue at trial.'" *Id.* (quoting *Estate of Trentadue v. United States*, 397 F.3d 840, 862 (10th Cir. 2005)); *see also 103 Investors I, L.P.*, 470 F.3d at 989 (upholding the district court's exclusion of evidence as a sanction for spoliation without a showing of bad faith).

## III. DISCUSSION

The United States contends that the recruitment files for Ms. Harkins, Mr. Harkins, and Mr. Fister were relevant personnel records that Defendant was required to retain until the termination of this litigation. Plaintiff asserts that Defendant's October 2014 destruction of these files "prejudices the United States by depriving it of contemporaneous evidence of NMSU's evaluation of the three assistant coaches." Mot. at 8. As a sanction, the United States requests that the Court exclude "any evidence that, in setting Mr. Fister's and Mr. Harkins' salaries, [NMSU] considered any education or experience beyond what is included in the coaching experience sections of their resumes." Mot. at 13. Plaintiff argues that the destroyed recruitment files contained the only contemporaneous record of salary setting decisions for the three assistant coaches. It maintains that prohibiting NMSU from presenting any evidence that it considered information other than that included in the coaching experience section of the resume is an appropriate sanction because the United States has no records of the decision-making process with which to challenge such testimony.

NMSU argues that the recruitment files are not relevant because (1) any important documents, such as resumes and cover letters, were transferred to the coaches' personnel files and were produced in discovery; (2) salaries were set based on the budget and NMSU relied on education and experience only to determine if a deviation from the budget was required; (3) the files contained information used in hiring, not salary setting, and (4) Ms. Harkins may not have had a standard recruitment file because she was not hired through a competitive process.

It is difficult to determine the exact relevancy of the information contained in destroyed files because their contents are unknown. However, the recruitment files clearly fall within the category of "relevant personnel records" as defined by 29 C.F.R. § 1602.14, and any documents

contained within the files would have been relevant to hiring decisions made regarding the three coaches. Further, NMSU itself argued that these files contained relevant salary comparisons when it sought dismissal based on laches. *See* Reply in Support of Defendant's Motion to Dismiss, ¶ 9 (Doc. No. 226). Accordingly, the Court finds that the recruitment files are relevant and that Defendant had a duty to preserve these records.

Even so, NMSU asserts that the United States has not been prejudiced by the destruction because the education and experience Defendant was aware of and relied on to set the coaches' salaries were listed on their resumes and did not come from "some extraneous source." *See* Resp. at 10–11. However, there is no substitute for the contemporaneous salary comparisons and any notes these recruitment files may have contained, and the Court therefore finds that Plaintiff has been prejudiced by the destruction of this evidence. Of course, the degree of prejudice is uncertain when the particular documents that were destroyed are not identifiable, but the Court concludes that a properly tailored evidentiary sanction would be appropriate under these circumstances. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44 (1991) (Federal courts possess the inherent power "to fashion an appropriate sanction[.]").

The United States' requested sanction is the exclusion of "any evidence that, in setting Mr. Fister's and Mr. Harkins' salaries, [NMSU] considered any education or experience beyond what is included in the coaching experience sections of their resumes." Mot. at 13. It argues that the breadth of this exclusion is warranted by NMSU's culpability in destroying the files and the prejudice the United States has suffered as a result. Any notes from interviews or consultations with references that could have reflected NMSU's knowledge or evaluation of the applicant have been destroyed. As a consequence, the United States contends that it will be unable to effectively cross-examine witnesses who testify that they learned and considered additional information

6

during the hiring process. The United States maintains that the destroyed files may have contained evidence that even qualifications listed in cover letters or other sections of the resumes were not actually relied on as a basis for salary-setting decisions. It asserts that this missing information has hindered its ability to demonstrate that NMSU's proffered justifications for the salary differences are pretextual.

The Court agrees that the destruction of contemporaneous records makes it difficult to prove what NMSU knew and considered, or failed to consider, at the time the hiring and salary-setting decisions were made. However, the Court believes the requested sanction is overly broad given that there is no dispute that the entirety of the resumes and cover letters were available to NMSU during the hiring process, were preserved in the personnel files, and were produced in discovery. Accordingly, the Court will grant the Motion in part but will impose a more limited sanction than the United States has requested.

IT IS THEREFORE ORDERED that:

(1) The UNITED STATES' MOTION FOR SPOLIATION SANCTIONS (Doc. No. 290) is GRANTED in part and DENIED in part;

(2) Defendant is precluded from introducing evidence that, in setting Mr. Harkins' and Mr. Fister's salaries, NMSU considered any education or experience that is not included in their respective resumes, cover letters, or other contemporaneous documentation of the hiring or salary-setting process that has been produced to the United States during discovery; and

(3) The United States may address through cross-examination (1) those qualifications that are documented but that it believes were not actually considered; (2) the inability of witnesses to recall the hiring and salary-setting process; and (3) the destruction of files after Defendant was notified of the charges in this case.

_____
SENIOR UNITED STATES DISTRICT JUDGE